IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ERIC KATZ,                        )
      Plaintiff,             )
                            )
      v.                          )      Civil Action No. 1:20-cv-554
                            )
U.S. DEPARTMENT OF JUSTICE, *et al.*,   )
      Defendants.          )

## <u>MEMORANDUM OPINION</u>

Plaintiff Eric Katz has sued his former employer, the Drug Enforcement Agency ("DEA"), alleging seven claims for relief under the Rehabilitation Act and Title VII. Specifically, plaintiff alleges the following claims:

1. Improper Demand for Medical Documentation and Examination under the Rehabilitation Act;

2. Improper Collection, Use, and Maintenance of Protected Medical Information under the Rehabilitation Act;

3. Failure to Accommodate under the Rehabilitation Act;

4. Hostile Work Environment under the Rehabilitation Act;

5. Discriminatory Constructive Discharge;

6. Retaliation under Title VII; and

7. Retaliatory Constructive Discharge. [1]

---

[1] Plaintiff brings his claim for retaliation under Title VII. Importantly, Title VII does not apply to this case. In pertinent part, Title VII makes it unlawful to discriminate against an employee because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII covers discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff does not make any allegations of discrimination on the basis of his race, color, religion, sex, or national origin. Thus, it is clear from the face of the Amended Complaint that Title VII does not apply. Neither plaintiff nor defendants have raised this issue, but instead briefed the merits of the claim. Because plaintiff's retaliation allegations state a plausible claim for relief under the Rehabilitation Act, 42 U.S.C. § 12203, and because the parties have adequately briefed the merits of plaintiff's claim, it is appropriate to evaluate the merits of plaintiff's retaliation claim under the Rehabilitation Act.

Additionally, plaintiff does not specify under what statute he brings his claims of discriminatory constructive discharge

This matter is now before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6), Fed. R. Civ. P. Oral argument on this matter was held telephonically on December 16, 2020. The parties were given an opportunity to provide supplemental briefing on the matter, which they submitted on December 28, 2020 and January 12, 2021. Because this matter has been fully briefed and argued telephonically, it is now ripe for disposition.

Because plaintiff has failed to state a claim for some, but not all, of the Counts alleged in the Amended Complaint, defendants' motion to dismiss must be granted in part and denied in part.

## I.

The following alleged facts are derived from the Amended Complaint and documents integral to and explicitly relied upon in the Amended Complaint.[2]

- Defendants are the DEA, the U.S. Department of Justice, and the Attorney General. *See* Am. Compl. ¶ 11.

- Plaintiff Eric Katz is a resident of North Carolina. Plaintiff worked as a Special Agent for the DEA from May 1996 until April 1, 2020. *See* Am. Compl. ¶ 17.

- In 2017, plaintiff was diagnosed with a brain tumor. Plaintiff was initially treated for the tumor at Stanford University Hospital ("Stanford"). Plaintiff was advised that his tumor was permanent in nature and would require continued monitoring throughout his lifetime. *See* Am. Compl. ¶ 22.

- After initial treatment at Stanford, plaintiff's doctors informed plaintiff that he could receive continuing care for his brain tumor at Duke University Medical Center ("Duke") in North Carolina. *See* Am. Compl. ¶ 22.

---

and retaliatory constructive discharge. Because the alleged harassment and alleged retaliation all relate to plaintiff's disability, the law of the Rehabilitation Act will be applied.

[2] Although matters beyond the Amended Complaint's allegations may not be considered in a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Fourth Circuit has made clear that an attachment to a motion to dismiss may be considered if the document "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Defendants attached two letters from plaintiff's doctors and the EEO Complaint underlying plaintiff's Amended Complaint, all of which were integral to and explicitly relied on in the Amended Complaint. Plaintiff's opposition attached three additional letters from his doctors, which were also integral to and explicitly relied on—and, indeed, quoted in part—in the Amended Complaint. The parties do not contest the authenticity of any of the documents. It is therefore appropriate to consider those documents in deciding defendants' motion to dismiss.

- Following plaintiff's treatment at Stanford, plaintiff submitted a medical hardship request to the DEA Career Board requesting a transfer from DEA Headquarters in Arlington, Virginia to North Carolina to be near Duke as an accommodation for his brain tumor. *See* Am. Compl. ¶¶ 17, 24-26.

- Plaintiff's request was approved on October 3, 2017, and plaintiff was transferred to Fayetteville, North Carolina. There, plaintiff worked on the Cellular Abductor Tracking System ("CATS") program, a system that he had previously worked on at the DEA Command Center in Arlington, Virginia. Plaintiff worked from office space at Fort Bragg outside Fayetteville,[3] and worked with DEA contractors based in North Carolina brought in to help with CATS. *See* Am. Compl. ¶¶ 26, 30, 33.

- Additionally, plaintiff sought and received an accommodation for as-needed telework. *See* Am. Compl. ¶ 31.

- In November 2018, Luke McGuire became plaintiff's new supervisor. McGuire was located at DEA Headquarters in Arlington, Virginia. *See* Am. Compl. ¶ 57.

- On March 14, 2019, McGuire visited Fort Bragg to review the operations of the CATS program in person. McGuire did not announce his visit to Fort Bragg to plaintiff in advance. When McGuire arrived at Fort Bragg during normal business hours, plaintiff was not present at the Fort Bragg office. *See* Am. Compl. ¶ 98, 119.

- On March 21, 2019, McGuire announced his intention to relocate the CATS program back to DEA Headquarters in Arlington, Virginia. With the relocation of the CATS program, plaintiff's position was also relocated to DEA Headquarters.[4] *See* Am. Compl. ¶ 104.

- After the decision was made to relocate the CATS program and plaintiff's former position in that program to DEA Headquarters, Derek Orr, a DEA employee in the Agency's Equal Employment Opportunity ("EEO") office contacted plaintiff to find a new reasonable accommodation for plaintiff. *See* Am. Compl. ¶¶ 128-32, 259.

- As part of the process of finding a new reasonable accommodation for plaintiff, Orr asked

---

[3] Fort Bragg is approximately eighty miles from Duke.

[4] Plaintiff alleges that McGuire's increased scrutiny of plaintiff's work and the CATS program—and McGuire's later decision to move the CATS program back to DEA Headquarters in Arlington, Virginia—arose from whistleblowing activity by the plaintiff. Specifically, plaintiff alleges that he complained that a contract covering the CATS program had been improperly awarded to a company with close ties to senior DEA management. Plaintiff alleges that "the move to relocate CATS ha[d] one purpose and one purpose only, to force [plaintiff] from the [DEA] as part of a retaliatory scheme to punish [plaintiff] for complaining about the corruption inherent in the award of [the] CATS [contract] by senior DEA employees to their former colleagues." Am. Compl. ¶ 105.

Plaintiff's claim of retaliation for protected whistleblower activity is currently before the Merit Systems Protection Board. *See* Am. Compl. ¶ 1, n.1.

plaintiff for updated medical information. Plaintiff reports that plaintiff "repeatedly, consistently, and explicitly objected to Orr's requests as retaliatory, a violation of EEO law[,] and a perversion of the EEO process." Am. Compl. ¶ 132. Nevertheless, plaintiff reports that he responded to Orr's request for updates with "numerous medical opinions and information justifying [plaintiff's] accommodations and recommending that [plaintiff] remain in the vicinity of [Duke]." Am. Compl. ¶ 158.

- In response to requests for medical records, Orr received at least five letters from doctors who had treated or were treating plaintiff. *See* Am. Compl. ¶ 178.

- On May 28, 2019, Dr. Steven D. Chang, MD, of Stanford Health Care, wrote to the "DEA Health Unit" that plaintiff "is our patient and was diagnosed with a brain tumor treated at Stanford from 09/08/2017 to 09/13/2017. Therefore, [plaintiff] will need future periodic scans and will need a specialist who is familiar with the disease process." Dr. Chang did not opine on the importance of plaintiff being close to Duke or any other specialist medical center. Dr. Chang Letter, May 28, 2019, Def. Mot. to Dismiss, Ex. C. *See also* Am. Compl. ¶ 215.

- On July 22, 2019, Dr. Michael Gertner, MD, of Menlo Park, California, wrote:

  > [Plaintiff] was diagnosed with a rare brain tumor and subsequently treated at Stanford from 09/08/2017 to 09/13/2017. As previously stated in the letters dated 09/30/2017 and 05/28/2019, to maintain continuity and quality of care for that disability, [plaintiff] should continue to have access to the Duke University Health Skull Base Tumor Treatment Center . . . . It is my recommendation that it is irresponsible and medically ill advised to remove this accommodation and prevent [plaintiff] from having the access he needs to specialists who understand the disease process."

  Dr. Gertner Letter, July 22, 2019, Def. Mot. to Dismiss, Ex. B. *See also* Am. Compl. ¶ 182-84.

- On August 14, 2019, Dr. Chang wrote another letter, this one addressed to "Whom It May Concern," in which he stated that plaintiff would be "under the care of Dr. Michael Gertner [of Menlo Park, California] for further follow up on his medical condition." Dr. Chang Second Letter, Aug. 14, 2019, Pl. Opp'n, Ex. 2. *See also* Am. Compl. ¶ 189.

- On August 25, 2019, Dr. Gertner wrote a second letter, this one addressed to Orr specifically, in which Dr. Gertner opines, among other things, that:

  > What [plaintiff] requires are [sic] continuation of existing accommodations that include a flexible work schedule, telecommuting[,] and the ability to attend Duke's Skull Based [sic] Medical Treatment Program. . . . .
  >
  > It is my professional opinion, which I state with medical certainty, that continued care at Duke is heavily indicated and it would be medically

4

> inappropriate and potentially harmful to [plaintiff's] physical and mental well-being, to force him to relocate from the area, so long as he is continuing in his medical care.

Dr. Gertner Second Letter, Aug. 25, 2019, Pl. Opp'n, Ex. 3. *See also* Am. Compl. ¶ 190.

- On or about August 1, 2019, Orr asked Dr. Chang, one of plaintiff's Stanford-based physicians, "Does [plaintiff] receive ongoing treatment at Duke University Medical Center for his condition and if so, what is the frequency?" Am. Compl. ¶ 188. It appears that the DEA did not receive an answer to that question in Dr. Chang's August 14, 2019 Letter, in Dr. Gertner's August 25, 2019 Letter, or at any time in the future. Indeed, although not explicitly alleged in the Amended Complaint, it appears that plaintiff never provided—and the DEA never received—any letter, medical record, or other proof of care from anybody at Duke, despite numerous requests to plaintiff and plaintiff's Stanford-based physicians for such documentation.[5]

- On July 3, 2019, Deborah Lary, part of the DEA's Health Services Unit, reviewed plaintiff's medical records and cancelled the medical advisory under which plaintiff had received his accommodation of placement in North Carolina. *See* Am. Compl. ¶¶ 178, 218.

- On July 11, 2019, the DEA notified plaintiff that he was to report for duty at DEA Headquarters in Arlington, Virginia. While logistics of the transfer were being arranged, plaintiff was to report to the DEA office in Raleigh, North Carolina. *See* Am. Compl. ¶ 174.

- Plaintiff did not report for duty at DEA Headquarters. From March 18, 2019 to April 1, 2020, plaintiff took a total of 955 hours of leave. *See* Am. Compl. ¶ 176. Plaintiff's report date at DEA Headquarters was delayed first until March 15, 2020 and then for a second time until April 1, 2020. *See* Am. Compl. ¶ 199. Plaintiff did not report for duty at either date. Instead, on April 1, 2020, plaintiff retired from the DEA at the age of 50. *See* Am. Compl. ¶¶ 196-97.

- Plaintiff first made contact with the DEA's EEO office on March 8, 2019. Informal efforts to resolve his claims were unsuccessful, and on April 17, 2019, plaintiff filed a formal complaint. Plaintiff's initial EEO complaint raised thirteen specific incidents of discrimination, retaliation, hostile work environment, and improper request for medical records. Plaintiff amended his formal complaint eleven times between April 25, 2019 and July 16, 2019. *See* Am. Compl. ¶¶ 12-13.

On May 14, 2020, plaintiff filed a sixty-two page Complaint, asserting eight claims. *See*

---

[5] As noted above and discussed in greater detail below, defendants' evidence of plaintiff's alleged bad faith in participating in the interactive process is largely extrinsic to the Amended Complaint and therefore not appropriately considered at the motion to dismiss stage. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Compl. On July 14, 2020, defendants filed a motion to dismiss and, on August 11, 2020, plaintiff filed a seventy-five page Amended Complaint. On September 1, 2020, defendants filed the instant motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6), Fed. R. Civ. P.

## II.

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). For purposes of resolving a motion to dismiss, plaintiff's well-pleaded allegations are assumed to be true and all facts are viewed in the light most favorable to plaintiff. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

## III.

In Count III of the Amended Complaint, plaintiff alleges that defendants violated the Rehabilitation Act by making an improper request for medical records.[6] This Count must be dismissed because it is clearly appropriate for employers to seek updated medical information as part of the process to determine a reasonable accommodation. As the Rehabilitation Act provides, an employer can request medical information when "such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S. Code § 12112(d)(4)(A). And importantly, the Fourth Circuit has made clear that once an accommodation is granted, an employer is not required to provide that particular accommodation in perpetuity. *See Elledge v.*

---

[6] Plaintiff also contends that the DEA made an improper request for a fitness for duty examination. The Amended Complaint does not disclose such a request.

*Lowe's Home Centers, LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020) (holding that an employer who had granted a light-duty accommodation was not required "to extend such a dramatic reduction in its work requirement indefinitely").

Here, because the CATS Program was being transferred to DEA Headquarters in Arlington, Virginia, the DEA necessarily had to determine whether a new assignment and/or a new reasonable accommodation were required for plaintiff.[7] Plaintiff had previously been granted accommodations to be stationed near Duke and to telework as needed. Importantly, however, an employer is not required to provide a particular accommodation in perpetuity. *See Elledge*, 979 F.3d at 1013. In other words, it was necessary to reevaluate plaintiff's accommodations given the fact that plaintiff's position in the CATS Program was being transferred. Therefore, the DEA's requests for updated medical information were, contrary to the allegations in the Amended Complaint, far from "retaliatory" or "a perversion of the EEO process." Am. Compl. ¶ 132. Rather, the DEA acted appropriately and consistently with business necessity in requesting updated medical information from plaintiff.

In conclusion, it was entirely proper for the DEA to request updated medical information from plaintiff to assist the DEA in identifying an appropriate reasonable  accommodation after the CATS program and plaintiff's position on the CATS program were moved back to DEA Headquarters. Thus, defendants' motion to dismiss in this respect must be granted, and Count III of the Amended Complaint must be dismissed.

**IV.**

In Count II of the Amended Complaint, plaintiff alleges that defendants violated the

---

[7] In defendants' motion to dismiss, defendants emphasize the fact that plaintiff signed a mobility agreement with the DEA in which plaintiff agreed to be transferred and moved at the discretion of the DEA. The mobility agreement is extrinsic to the Amended Complaint and is therefore not properly before the Court at this time.

Rehabilitation Act by improperly collecting, using, and maintaining protected medical information. Plaintiff alleges that his confidential medical information was improperly disclosed on November 29, 2018 and February 12, 2019, as well as on other, unspecified dates. *See* Am. Compl. ¶ 236. Defendants argue that Count II should be dismissed pursuant to Rule 12(b)(1) or 12(b)(6), Fed. R. Civ. P., (i) because plaintiff failed to bring the November 2018 claim before the EEO counselor within forty-five days of the action,[8] and (ii) because plaintiff has failed to allege a tangible injury or to allege nonconclusory violations of the confidentiality provisions of the Rehabilitation Act. For the reasons stated below, defendants' motion to dismiss with respect to Count II must be granted.

Under the Rehabilitation Act, employers may not request employees' medical information unless the "inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). Importantly, however, employers "may make inquiries into the ability of an employee to perform job-related functions." *Id*. The Fourth Circuit has made clear that "[a]n employer's request for a medical examination is job-related and consistent with business necessity when: '(1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others.'" *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (quoting *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)).

Once an employee's medical information is legitimately obtained through employer

---

[8] Defendants bring this portion of the motion to dismiss under Rule 12(b)(1) or, in the alternative, Rule 12(b)(6), because defendants claim it is unsettled whether a federal employee's failure to exhaust presents a jurisdictional flaw or is a failure to state a claim. *See* Defs. Mot. to Dismiss, at 16 n.6 (Dkt. 19). Indeed, although the Supreme Court has made clear that Title VII's charge-filing requirement is not jurisdictional, neither the Supreme Court nor the Fourth Circuit have established whether this similar provision under the Rehabilitation Act is jurisdictional. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019) (holding that Title VII's charge-filing requirement is not jurisdictional). It is not necessary to decide this issue here because whether for lack of subject matter jurisdiction or failure to state a claim, plaintiff's claim based on the alleged November 2018 disclosure must be dismissed for failure to exhaust.

inquiries or examinations, that information must be "treated as a confidential medical record." 42 U.S.C. § 12112(d)(4). As an exception to the rule, "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." *Id*. As other courts have persuasively found, "in order to state a claim under the Rehabilitation Act's confidentiality provisions . . . a plaintiff must show that an unauthorized disclosure of medical information resulted in a 'tangible injury.'" *Koch v. Walter*, 935 F. Supp. 2d 164, 176 (D.D.C. 2013); *see also Cossette v. Minnesota Power & Light,* 188 F.3d 964, 970 (8th Cir. 1999) (holding that a plaintiff must establish a "tangible injury" resulting from an unauthorized disclosure of confidential medical information in order to state a claim).

These settled principles, applied here, indicate that plaintiff's allegations are insufficient to state a claim for a violation of the confidentiality provisions of the Rehabilitation Act. To begin with, the claims in Count II that refers to the DEA sharing plaintiff's information with unauthorized individuals in November 2018 must be dismissed based on plaintiff's failure to bring the matter before the EEO counselor within forty-five days.[9] Plaintiff alleges that he learned that his information had been shared on November 29, 2018. *See* Am. Compl. ¶ 236. Plaintiff first contacted the EEO counselor on March 8, 2019, ninety-nine days after plaintiff learned of that disclosure. *See id.* ¶ 12. Thus, the claims based on the alleged November 2018 disclosures in the Amended Complaint must be dismissed for failure to exhaust.

Defendants also seek dismissal of the remaining claims in Count II because plaintiff did not raise those claims in his EEO complaint. Defendants' argument in this regard is unpersuasive. As the Fourth Circuit has made clear, "the scope of the civil action is confined only by the scope

---

[9] Under the Rehabilitation Act, an employee must "initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105.

of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.,* 665 F.2d 482, 491 (4th Cir. 1981). Plaintiff's remaining claims in Count II do not go beyond the scope of the administrative investigation that could be expected to result from plaintiff's original EEO complaint. Thus, dismissal on this ground is not appropriate.

Nonetheless, the remainder of plaintiff's claims in Count II must be dismissed because plaintiff has failed to establish that he suffered any tangible injury as a result of the allegedly improper disclosure of his medical information. Plaintiff's chief allegation is that the allegedly improper collection, use, and maintenance of his medical information caused injury because the information was "out of date" and "resulted in [plaintiff's] involuntary transfer in July 2019." Am. Compl. ¶¶ 244-45. This "injury" plainly amounts to a disagreement with the substantive result of the DEA's determination regarding plaintiff's accommodation, which has no nexus of causation to the alleged violations. In other words, plaintiff has not plausibly alleged that the alleged violations of the confidentiality provision of the Rehabilitation Act were the cause of the DEA's determination to remove plaintiff's prior accommodation.

Seeking to avoid this conclusion, plaintiff argues for the first time in his opposition brief that he had previously suffered "severe stress" that "culminated in a hospitalization" because of the unauthorized disclosure of his medical information. *See* Pl. Opp'n, at 19-20 (Dkt. 29).[10] Although stress-induced hospitalization would certainly amount to a tangible injury, the stress referred to in plaintiff's opposition is not plausibly connected to any demand for or disclosure of

---

[10] Plaintiff identifies this alleged injury in his opposition, and he cites only an exhibit to defendants' memorandum in support of the motion to dismiss to support his claim. Plaintiff does not identify any portion of his seventy-five page Amended Complaint to support his contention, and the Court could find none.

medical information procured through employer inquiries or examinations.[11] Instead, as plaintiff's underlying EEO Complaint reveals, the disclosure that allegedly caused plaintiff's hospitalization for stress was the result of an e-mail written to McGuire, plaintiff's supervisor, by a former contract employee who worked under plaintiff. *See* Defs. Mot. to Dismiss, Ex. A, at 10 (Dkt. 15). McGuire is alleged to have improperly shared that e-mail with the former contract employee's supervisor. *Id*. Importantly, (i) the disclosure is not alleged in the seventy-five page Amended Complaint and (ii) the disclosure did not involve medical information obtained by an employer's inquiry or examination.[12] Plaintiff has failed to identify a tangible injury that is a result of a disclosure involving medical information obtained by an employer's inquiry or examination. Thus, plaintiff has failed to state a claim for improper collection, use, and maintenance of protected medical information under the Rehabilitation Act. Therefore, defendants' motion to dismiss Count II of the Amended Complaint must be granted.

## V.

To state a claim alleging a *prima facie* case for failure to provide reasonable accommodations under either the Rehabilitation Act or the Americans with Disabilities Act ("ADA"), a plaintiff must show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer

---

[11] Under 42 U.S. Code § 12112(d)(4), only information that is obtained pursuant to an employer examination or inquiry is required to be treated as a confidential medical record.

[12] As described above, the medical information was disclosed by a contract employee that worked under plaintiff in the CATS program. The disclosure was not the result of an inquiry by the DEA; rather, the contract employee is described in plaintiff's underlying EEO complaint as "advis[ing] that [plaintiff's] ability to monitor and oversee the [CATS] program never wavered even after [plaintiff] was diagnosed with a brain tumor" within a larger e-mail in which the contract employee disagreed with management actions undertaken by plaintiff's supervisor and the contract employee's supervisor. *See* Defs. Mot. to Dismiss, Ex. A, at 9-10 (Dkt. 15).

refused to make such accommodations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *see also Taylor v. Hampton Roads Reg'l Jail Auth*., 550 F. Supp. 2d 614, 616 (E.D. Va. 2008) ("The elements of a claim under the ADA and the Rehabilitation Act are the same."). As the Fourth Circuit has made clear, "while a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, plaintiff has alleged facts sufficient to support the elements of a failure to accommodate claim.

Seeking to avoid this conclusion, defendants argue that plaintiff failed to allege that plaintiff participated in the interactive process of identifying a reasonable accommodation in good faith, and that plaintiff therefore fails to satisfy an implicit element of (4) whether the employer refused to make a reasonable accommodation. Although plaintiff's apparent failure to participate in the interactive process in good faith would be fatal to plaintiff's reasonable accommodation claim, plaintiff's alleged failure is not apparent in the materials appropriate for review at the preliminary motion to dismiss stage. Thus, at this time, plaintiff has pled facts sufficient to survive a motion to dismiss.[13]

Defendants next argue that plaintiff's proposed accommodation of placement in North Carolina is unreasonable as a matter of law, and that plaintiff therefore fails to satisfy the requirement that (3) with a reasonable accommodation plaintiff could perform the essential functions of his position. Defendants' argument is not convincing. Indeed, plaintiff has alleged that he could perform the essential functions of his position if he were assigned to a position near

---

[13] It should be noted that defendants need not wait for the end of discovery to seek summary judgment on this or other claims, and that defendants may file multiple motions for summary judgment on different claims, at different times, if appropriate.

Duke and if he were allowed to telework as needed.

Defendants argue that reassignment to a position near Duke is *per se* unreasonable given the fact that DEA Special Agents are required to sign mobility agreements in which they agree to be eligible for transfer. As noted above, the mobility agreement is extrinsic to the Amended Complaint and is not properly considered at this stage in the proceedings. Moreover, the Amended Complaint alleges that the DEA previously granted plaintiff's request to remain near Duke as an accommodation. It would be remarkable to conclude, based only on plaintiff's Amended Complaint, that an accommodation that has previously been granted by an employer is facially unreasonable. Thus, it is clear that a more complete record is needed to determine whether plaintiff's proposed accommodation is reasonable as a matter of law. Dismissal on this ground is therefore improper at this preliminary stage.[14]

Accordingly, defendants' motion to dismiss in this regard must be denied.

## VI.

Plaintiff next alleges that defendants created a hostile work environment based on plaintiff's disability. Because plaintiff fails to allege a plausible link between his disability and most of the alleged harassment and because the remaining putative harassment amounts to a series of unexceptional workplace disagreements and frictions that are neither severe nor pervasive,

---

[14] Although plaintiff's failure to accommodate claim survives, that fact does not alter the extraordinary nature of plaintiff's claim. In essence, plaintiff contends that Duke was the only place in the United States where he could receive adequate medical care. That incredible claim is all the more surprising for the fact that plaintiff's *Stanford-based* physician Dr. Gertner wrote in support of the claim, seemingly proclaiming his own inability to treat plaintiff adequately. Dr. Chang, by contrast, in his letter suggests only that plaintiff would "need a specialist who is familiar with the disease process." Dr. Chang Letter, May 28, 2019, Def. Mot. to Dismiss, Ex. C. *See also* Am. Compl. ¶ 215.

Johns Hopkins Hospital, Howard University Hospital, George Washington University Hospital, Georgetown University Medical Center, Virginia Commonwealth University Medical Center, and the University of Virginia Health System, among others, are all close to DEA Headquarters in Arlington, Virginia. Indeed, most of these hospitals are closer to DEA Headquarters than Fort Bragg is to Duke. The contention that the only doctors who could competently treat plaintiff are at Duke strains credulity.

plaintiff's claim for hostile work environment must be dismissed.

In order to establish a *prima facie* case for hostile work environment under the Rehabilitation Act, plaintiff must allege that "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *see also Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003) (applying standard at motion to dismiss stage); *Edmonson v. Potter*, 118 F. App'x 726, 730 (4th Cir. 2004) (applying ADA standard for a hostile work environment claim to the Rehabilitation Act). And as stated above, "while a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555). Importantly, the Fourth Circuit has made clear that "only harassment that occurs because of the victim's [protected class] is actionable." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

Additionally, the Fourth Circuit has recognized in the parallel Title VII hostile work environment context that plaintiffs "must clear a high bar in order to satisfy the severe or pervasive test." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). Thus, complaints that allege only "rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor" are insufficient to state a claim for hostile work environment under the Rehabilitation Act. *Id*.

These principles, applied here, point persuasively to the conclusion that plaintiff has failed to state a claim for hostile work environment under the Rehabilitation Act. To begin with, plaintiff

has failed to allege beyond a speculative level that most of the harassment occurred because of plaintiff's disability. In the Amended Complaint, plaintiff alleges harassment including:

> (1) an unannounced visit by plaintiff's supervisor;
>
> (2) removal of DEA computers from the CATS Program office at Fort Bragg;
>
> (3) requiring that plaintiff account for DEA equipment;
>
> (4) being subject to increased scrutiny and micromanagement, including being required to provide notice of leave in advance and to provide information about telephone conversations;
>
> (5) plaintiff's transfer to a position in Arlington, Virginia;
>
> (6) being asked for medical information related to his accommodations;
>
> (7) the removal of plaintiff's accommodations allowing for his placement in North Carolina and for as-needed telework; and
>
> (8) criticism by McGuire of plaintiff's absence during McGuire's unannounced visit.

Plaintiff connects only the alleged harassment in (6), (7), and (8) even tangentially to plaintiff's disability. Plaintiff fails to make nonconclusory allegations that any of the other alleged harassment occurred, as required by binding precedent, "because of the victim's [protected class]." *Hartsell*, 123 F.3d at 772. In other words, plaintiff has not alleged that he was subject to the unannounced visit, to increased scrutiny and micromanagement, or to transferal to Arlington *because of* plaintiff's disability. Rather, plaintiff alleges that the majority of the alleged harassment occurred because of plaintiff's whistleblower activity, which, as stated previously, is part of a claim that is currently before the Merit Systems Protection Board. *See* Am. Compl. ¶¶ 1, n.1, 105, 137. Indeed, plaintiff goes so far as to allege that moving the CATS Program "ha[d] one purpose and one purpose only," which was to retaliate against plaintiff's whistleblowing. Am. Compl. ¶ 105. Thus, none of that alleged harassment is actionable under the Rehabilitation Act.

With respect to the alleged harassment described in (6), as explained above, it was perfectly

appropriate for the DEA to seek medical information regarding plaintiff's disability under the Rehabilitation Act. And with respect to (7), plaintiff may not convert a failure to accommodate claim into a hostile work environment claim by incorporating defendants' alleged failure to accommodate into the hostile work environment claim. Moreover, even if defendants' alleged failure to accommodate were considered alongside other incidents of alleged harassment, "courts have frequently found failures to accommodate, even when accompanied by other allegedly hostile conduct, insufficient to state a hostile work environment claim." *Stewart v. Ross*, 2020 WL 1907471, at *16 (E.D. Va. Apr. 17, 2020) (collecting cases), *aff'd*, 833 F. App'x 995 (4th Cir. 2021).

That leaves one incident of harassment that allegedly occurred because of plaintiff's disability: (8) McGuire's criticism of plaintiff because of plaintiff's absence from the CATS worksite during McGuire's unannounced visit to the worksite. Even assuming *arguendo* that McGuire was aware of plaintiff's telework agreement,[15] criticism of plaintiff's absence, even combined with defendants' alleged failure to accommodate, plainly fails to meet the "high bar" required to satisfy the severe or pervasive test. *Evans*, 936 F.3d at 192. Allegations of rude, callous treatment from a supervisor, even if based on plaintiff's disability, are insufficient to state a claim for hostile work environment under the Rehabilitation Act. *See Evans*, 936 F.3d at 192.

Thus, plaintiff's hostile work environment claim must be dismissed. Plaintiff will be given leave to amend the hostile work environment claim. Any amendment will be held to a high bar because plaintiff has already had the opportunity to amend once and to respond to defendants'

---

[15] After plaintiff responded to McGuire's criticism by informing McGuire that plaintiff had a telework accommodation, McGuire replied that he was "not aware of any approved telework agreement" in place for plaintiff. Am. Compl. ¶ 317. Nonetheless, plaintiff alleges that McGuire "was fully aware of the fact [that plaintiff] had reasonable accommodations" when McGuire criticized plaintiff, so it is appropriate to assume that McGuire was aware of the telework accommodation at the motion to dismiss stage. Am. Compl. ¶¶ 120-21.

arguments in defendants' first motion to dismiss.

## VII.

Next, plaintiff alleges that he was constructively discharged based on a discriminatory hostile work environment.

To state a claim for discriminatory constructive discharge, a plaintiff is required to show "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and that "he actually resigned." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). Importantly, the Supreme Court has made clear that a hostile work environment claim is a "lesser included component" of the "*graver* claim of hostile-environment constructive discharge." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004) (emphasis in original). Thus, plaintiff's claim for discriminatory constructive discharge fails for the same reasons that his claim for hostile work environment fails. Specifically, plaintiff has failed to allege that the majority of the alleged harassment occurred because of his disability rather than because of plaintiff's whistleblowing activity. With respect to the remaining allegations of discriminatory harassment, as described in detail above, the alleged harassment is only tenuously related to plaintiff's disability and fails to meet the high bar required for a claim of constructive discharge.[16]

Thus, defendants' motion to dismiss plaintiff's claim for discriminatory constructive discharge must be granted.

## VIII.

Plaintiff next alleges that defendants retaliated against him for engaging in protected EEO

---

[16] As the Fourth Circuit has made clear in the Rehabilitation Act context, failure to accommodate, in and of itself, does not entail a constructive discharge. *See Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993).

activity.[17]

To establish a *prima facie* case of retaliation, plaintiff must show (1) that he engaged in a protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action. *See King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). In regards to the second prong, the Fourth Circuit has explained that "[a]n alleged retaliatory action must be 'materially adverse,' meaning that the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Laird v. Fairfax Cty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[18] With respect to the third element of a retaliation claim, the Fourth Circuit has made clear that a plaintiff may attempt to satisfy the causal connection prong in two ways: a plaintiff may establish (i) "the existence of facts that suggest that the adverse action occurred because of the protected activity" or (ii) "that the adverse act bears sufficient temporal proximity to the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quotation marks removed).

Here, plaintiff alleges that he engaged in protected EEO activity beginning on March 8, 2019 and continuing throughout the next months as plaintiff submitted and then amended his EEO complaint. Submission of an EEO complaint is protected activity under the Rehabilitation Act. *See* 42 U.S.C. 12203.

With respect to the second prong, plaintiff alleges that the DEA took adverse employment

---

[17] As mentioned above, plaintiff brings this claim under Title VII. However, Title VII does not apply to alleged discrimination on the basis of a disability. Thus, plaintiff's claim will be considered under the Rehabilitation Act.

[18] The Fourth Circuit has further noted that the alleged adverse action in a retaliation claim can extend "beyond workplace-related or employment-related retaliatory acts and harm." *Laird*, 978 F.3d at 893 (quoting *Burlington*, 548 U.S. at 67). In other words, a *prima facie* case for retaliation does not require an adverse *employment* action, but only an "adverse action."

actions against him by (1) moving the CATS program to DEA Headquarters in Arlington, Virginia; (2) removing all of plaintiff's duties; (3) removing plaintiff's prior accommodations of placement in North Carolina and as-needed telework; and (4) involuntarily transferring plaintiff to DEA Headquarters.[19] Two of these allegations fail to state a claim for retaliation beyond the speculative level, as they lack a causal connection between the adverse action and plaintiff's protected activity and thus fail to satisfy the third prong. However, plaintiff has stated a claim with respect to his involuntary transfer to DEA Headquarters and defendants' alleged failure to accommodate.

To begin with, plaintiff made clear elsewhere in his Amended Complaint that the relocation of the CATS program was not accomplished to retaliate against plaintiff's EEO activity. Indeed, plaintiff's Amended Complaint explicitly states that "McGuire['s] decision to have the CATS program relocate, [sic] was designed to remove [plaintiff] from his oversight over the program and punish him for his criticism of the award of the program to DEA cronies." Am. Compl. ¶ 137. Moreover, the timeline of events reveals that there is no causal connection between the relocation of the CATS program to DEA Headquarters and plaintiff's EEO activity. The Amended Complaint alleges that the decision to relocate the CATS program to DEA Headquarters was made in February 2019, before plaintiff ever contacted the EEO counselor. *See* Am. Compl. ¶ 314; *see also* EEO Complaint, Defs. Mot. to Dismiss, Ex. A, at 10 ("02/27/2019 – [Plaintiff] discovers that the CATS program is being relocated to Virginia.").

Plaintiff's allegations regarding the removal of his duties similarly fail to state a plausible

---

[19] Although some of these alleged adverse actions overlap in the resulting effect on plaintiff—namely that he was involuntarily transferred to DEA Headquarters in Arlington, Virginia—the adverse actions have separate dates involved and, at times, separate decision-makers. The decision to move the CATS Program to Arlington, Virginia was made informally by McGuire in February 2019, and formalized in April 2019. *See* Am. Compl. Am. Compl. ¶ 314. Plaintiff's medical accommodations were removed from his file by Deborah Lary on July 3, 2019. *See* Am. Compl. ¶ 166. Plaintiff was notified of his transfer to DEA Headquarters by "the DEA" on July 11, 2019. *See* Am. Compl. ¶ 174. It is therefore appropriate to consider the four alleged adverse actions separately.

claim for retaliation. This is because, as alleged in the Amended Complaint, plaintiff's duties were "taken away" during "February 2019," before plaintiff's EEO activity in March 2019. Am. Compl. ¶ 314; *see also Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) ("The employee must show that the adverse employment action took place after the protected activity."). Plaintiff has therefore failed to allege a plausible claim for retaliation with respect to both the relocation of the CATS program and the removal of plaintiff's duties.

Nonetheless, the Amended Complaint does state a plausible claim for retaliation with respect to plaintiff's transfer from North Carolina to Arlington, Virginia and defendants' alleged failure to accommodate. In this regard, plaintiff has alleged that he engaged in protected activity by contacting the EEO counselor and filing an EEO complaint beginning March 8, 2019. Next, plaintiff has alleged that he suffered an adverse action (i) by failing to be reasonably accommodated[20] and (ii) by being involuntarily transferred from North Carolina to Arlington, Virginia. Given the allegations in the Amended Complaint that plaintiff thought it necessary to remain near Duke for his health and that plaintiff communicated that belief to McGuire, plaintiff's supervisor, it is plausible that plaintiff's transfer to Arlington, Virginia "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.

Finally, plaintiff has alleged a causal connection between his EEO activity and both the alleged failure to accommodate and the transfer that is sufficient to state a claim for retaliation.[21]

---

[20] The Third Circuit has persuasively found that "[a]n employer's failure to reasonably accommodate . . . can also amount to an adverse employment action." *Storey v. Burns Int'l Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004).

[21] It should be noted that plaintiff necessarily had to be transferred to a new position because of the relocation of the CATS program from North Carolina to Arlington, Virginia. However, the DEA did not need to transfer plaintiff away from North Carolina, which was clearly disfavored by plaintiff. Notably, the DEA has an office in Raleigh, North Carolina; indeed, plaintiff alleges that he was told to report to the Raleigh DEA office until he was issued transfer control numbers. *See* Am. Compl. ¶ 174.

Specifically, plaintiff has alleged that he engaged in EEO activity beginning on March 8, 2019 and continuing to August 2019, and that plaintiff was told on July 11, 2019 that he was being transferred from North Carolina to Arlington, Virginia, contrary to plaintiff's desired accommodation. *See* Am. Compl. ¶¶ 12-13, 174, 294.[22] The temporal proximity between plaintiff's continuing EEO activity and his transfer is adequate to satisfy the causal connection prong. *See Roberts*, 998 F.3d at 123.[23]

In conclusion, although some of plaintiff's allegations fail to state a claim for retaliation, plaintiff's claims that he was not granted a reasonable accommodation and that he was transferred from North Carolina to DEA Headquarters in retaliation for his EEO activity are sufficiently alleged to state a claim. Accordingly, defendants' motion to dismiss as it applies to these two adverse employment actions must be denied.

## IX.

Finally, plaintiff claims that he was constructively discharged on the basis of protected EEO activity.

Like a general claim for retaliation, in order to establish a *prima facie* case for retaliatory

---

[22] Plaintiff alleges that he made first contact with the EEO counselor on March 8, 2019, filed a formal complaint on April 17, 2019, and amended his formal EEO complaint on April 25, 2019, May 6, 2019, May 13, 2019, May 14, 2019, May 31, 2019, June 7, 2019, June 13, 2019, and August 27, 2019. *See* Am. Compl. ¶¶ 12-13. Plaintiff alleges that his transfer was "finalized" on December 12, 2019. *See id.* ¶ 295. Plaintiff further alleges that he was transferred to the position of staff coordinator for the confidential source section, a position for which plaintiff did not apply. *See id.* Plaintiff alleges that his transfer and report date was delayed until March 15, 2020 and then April 1, 2020. *See id.* at 297. Plaintiff alleges that he retired on April 1, 2020. *See id.* ¶ 359.

[23] Although there is no bright-line rule for temporal proximity, the Fourth Circuit has generally held that lapses of three to four months are "too long to establish a causal connection by temporary proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006); *see also Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (finding a lapse of two months between the protected activity and the adverse action "to weaken significantly the inference of causation").

Here, plaintiff's initial EEO contact occurred in March 2019, and he was informed of his transfer four months later in July 2019. However, in addition to the initial EEO contact in March, plaintiff filed his formal EEO complaint in April 2019 and amended it several times in May and June 2019. Thus, the temporally proximity of the protected activity and the adverse action are sufficiently close to state a claim for retaliation.

constructive discharge, plaintiff must show (1) that he engaged in a protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action. *See King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). To allege constructive discharge, a plaintiff must plausibly allege that his working conditions were so intolerable that a reasonable person in the employee's position would have been compelled to resign. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).[24]

Here, plaintiff has alleged sufficient facts to support a *prima facie* case for retaliatory constructive discharge. As discussed above, plaintiff has alleged that he engaged in protected activity by contacting an EEO counselor and submitting—and then amending—an EEO complaint. Plaintiff has also alleged that he was constructively discharged, a clear adverse action. Importantly, plaintiff has alleged facts to support the conclusion that "a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255. Specifically, although much of the Amended Complaint is dedicated to plaintiff's subjective belief that moving away from North Carolina would be medically inadvisable, plaintiff alleges that his Stanford-based physician wrote that "continued care at Duke University is heavily indicated and it would be medically inappropriate and potentially harmful to [plaintiff's] physical and mental wellbeing to force him to relocate from the area." Am. Compl. ¶ 190(d). At this preliminary stage, this allegation in the Amended Complaint is sufficient to support the conclusion that plaintiff's allegedly retaliatory transfer away from North Carolina created working conditions that were so intolerable

---

[24] It is important to note the difference between this claim and plaintiff's claim for discriminatory constructive discharge. Plaintiff's claim for discriminatory constructive discharge is based on putative harassment, the vast majority of which is alleged to have occurred because of plaintiff's whistleblowing activity, *not* because of plaintiff's disability. In contrast, plaintiff's retaliatory constructive discharge claim is based on alleged retaliation based on plaintiff's EEO activity. Unlike plaintiff's discriminatory constructive discharge, plaintiff's retaliatory constructive discharge claim can base an argument for causation on the temporal proximity between the protected EEO activity and the alleged adverse action, which plaintiff alleges would harm his health and be against medical advice. Thus, plaintiff's claim for retaliatory constructive discharge survives while plaintiff's claim for discriminatory constructive discharge fails.

that a reasonable person in plaintiff's position would have felt compelled to resign.[25] Finally, plaintiff has alleged a causal connection between his allegedly compelled resignation and his EEO activity because plaintiff's EEO activity and the initial notice of transfer were temporally proximate. Together, this is sufficient to state a claim for retaliatory constructive discharge.

Thus, defendants' motion to dismiss plaintiff's claim for retaliatory constructive discharge must be denied.

*    *    *

In summary, the motion to dismiss will be disposed of as follows:

1. Motion to dismiss **denied** as to Count I - Failure to Accommodate under the Rehabilitation Act.

2. Motion to dismiss **granted** as to Count II - Improper Collection, Use, and Maintenance of Protected Medical Information under the Rehabilitation Act.

3. Motion to dismiss **granted** as to Count III - Improper Demand for Medical Documentation and Examination under the Rehabilitation Act.

4. Motion to dismiss **granted** as to Count IV - Hostile Work Environment under the Rehabilitation Act. Plaintiff is given leave to amend his complaint with respect to this Count.

5. Motion to dismiss **granted in part** and **denied in part** as to Count V - Retaliation under the Rehabilitation Act. The motion will be granted insofar as the claims of retaliation involving the transfer of the CATS Program and the removal of plaintiff's duties will be dismissed. The motion will be denied—and the claims will survive—with respect to allegations involving plaintiff's transfer to Arlington, Virginia and defendants' alleged failure to accommodate.

6. Motion to dismiss **granted** as to Count VI - Constructive Discriminatory Discharge.

7. Motion to dismiss **denied** as to Count VII - Constructive Retaliatory Discharge.

---

[25] It bears repeating that plaintiff's contention that Duke was the only place he could receive adequate medical care in the United States strains credibility. There are dozens of top-tier medical institutions in the United States, including several in the Arlington, Virginia area, such as Johns Hopkins Hospital, Howard University Hospital, George Washington University Hospital, Georgetown University Medical Center, Virginia Commonwealth University Medical Center, and the University of Virginia Health System.

An appropriate Order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
August 26, 2021

/s/

T. S. Ellis, III
United States District Judge