IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIC KATZ, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>U.S. DEPARTMENT OF JUSTICE, *et al.*, )<br>    Defendants. ) | Civil Action No. 1:20-cv-554 |

## MEMORANDUM OPINION

This employment discrimination case is before the Court on defendant United States Department of Justice's motion to dismiss one of the counts alleged in plaintiff Eric Katz's Second Amended Complaint ("SAC"). This is the second motion to dismiss filed by defendant. An August 26, 2021 Order granted in part and denied in part defendant's first motion to dismiss the complaint. *See Katz v. Dep't of Justice*, 2021 WL 3809034 (E.D. Va. Aug 26, 2021) (Dkt. 50). In particular, the August 26, 2021 Order denied the motion to dismiss with respect to the following counts, and allowed the suit to proceed on those allegations.

- Count I – Failure to Accommodate under the Rehabilitation Act
- Count V – Retaliation under the Rehabilitation Act[1]
- Count VII – Constructive Retaliatory Discharge

However, the August 26, 2021 Order granted the first motion dismiss with respect to the following counts.

- Count II – Improper Collection, Use, and Maintenance of Protected Medical Information

---

[1] The August 21, 2021 Order permitted the retaliation claim to proceed *only* with respect to allegations concerning plaintiff's job transfer to Arlington, Virginia and defendant's corresponding failure to accommodate. The claim was dismissed with respect to all other allegations, including the removal of plaintiff's job duties. *See* Dkts. 50, 51.

1

under the Rehabilitation Act

- Count III – Improper Demand for Medical Documentation and Examination under the Rehabilitation Act
- Count IV – Hostile Work Environment under the Rehabilitation Act
- Count VI – Constructive Discriminatory Discharge

Importantly, the August 26, 2021 Order granted plaintiff leave to amend his hostile work environment claim. Plaintiff timely filed a Second Amended Complaint ("SAC") on September 22, 2021, *see* Dkt. 57, and defendant thereafter moved to dismiss the SAC complaint solely with respect to the amended hostile work environment claim. *See* Dkt. 58. The motion has been fully briefed, and the parties waived oral argument. The motion to dismiss is therefore ripe for disposition, and for the reasons stated below, the motion to dismiss must be granted and plaintiff's hostile work environment claim must be dismissed.

I.

The facts of this case were thoroughly summarized in an August 26, 2021 Memorandum Opinion, *see Katz v. Dep't of Justice*, 2021 WL 3809034 (E.D. Va. Aug 26, 2021) (Dkt. 51), and need not be fully repeated here. Nonetheless, it is appropriate to recount briefly certain of plaintiff's allegations in the SAC, as the facts alleged have changed slightly from those alleged in the First Amended Complaint. The following alleged facts are derived from the SAC and documents integral to, and relied upon, in the SAC.

- Defendants are the United States Drug Enforcement Agency ("DEA"), the U.S. Department of Justice, and the Attorney General.

- Plaintiff Eric Katz was employed as a Special Agent for the DEA from May 1996 until April 1, 2020. *See* SAC ¶ 17.

- In 2017, plaintiff was diagnosed with a brain tumor. Plaintiff was initially treated for the tumor at Stanford University Hospital ("Stanford"). Plaintiff was advised that his tumor

2

was permanent in nature and would require continued monitoring throughout his lifetime. *See* SAC ¶ 22.[2]

- After initial treatment at Stanford, plaintiff's Stanford doctors informed plaintiff that he could receive continuing care for his brain tumor at Duke University Medical Center ("Duke") in North Carolina. *See* SAC ¶ 22.

- Following plaintiff's treatment at Stanford, plaintiff submitted a medical hardship request to the DEA Career Board requesting a transfer from DEA Headquarters in Arlington, Virginia to North Carolina to be near Duke as an accommodation for his brain tumor. Plaintiff's request was approved on October 3, 2017, and plaintiff was transferred to Fayetteville, North Carolina. *See* SAC ¶¶ 24-26.

- While assigned to Fayetteville, plaintiff worked on the Cellular Abductor Tracking System ("CATS") program, a system that plaintiff had previously worked on at the DEA Command Center in Arlington, Virginia. Plaintiff worked from office space at Fort Bragg outside Fayetteville, North Carolina, and worked with contractors based in North Carolina hired by the DEA. *See* SAC ¶¶ 26–28, 30, 33.[3]

- Additionally, plaintiff sought and received from the DEA a supplemental accommodation for telework, allowing plaintiff to work from home on an as-needed basis. *See* SAC ¶ 31.

- In November 2018, Luke McGuire became plaintiff's supervisor. McGuire worked primarily in DEA Headquarters in Arlington, Virginia. *See* SAC. ¶ 57.

- In January 2019, Katz became concerned that DEA employees "were violating their own oath of office and federal law by awarding contracts to their friends and former colleagues." SAC ¶ 48. On January 29, 2019, Katz filed a complaint with the Federal Bureau of Investigations ("FBI"), claiming that contract award decisions made by DEA officers, including contract award decisions related to the CATS program, violated federal law regarding conflict of interests and self-dealing. This complaint was referred to the Department of Justice's Inspector General's Office. *See* SAC ¶¶ 47–51.[4]

- Prior to Katz's complaint to the FBI, McGuire had only limited involvement with the CATS program. But several weeks after Katz made his complaint about potential DEA self-dealing, Katz alleges that McGuire "began scheming to remove plaintiff from his position and transfer control over [the] CATS [program] to Arlington, Virginia." *See*

---

[2] Neither the SAC nor any prior complaint alleges that the tumor is malignant. Nothing in the record clarifies whether plaintiff's tumor is malignant or benign.

[3] Fort Bragg and Fayetteville are approximately 80 miles from Duke University.

[4] Nothing in this record indicates what, if any, action the Inspector General's Office has taken in response to Katz's complaint.

3

SAC ¶ 52.[5]

- On March 14, 2019, McGuire made an unannounced visit Fort Bragg to review the operations of the CATS program. When McGuire arrived at Fort Bragg, plaintiff was not present at the Fort Bragg office. *See* SAC ¶¶ 101, 104.

- On March 21, 2019, McGuire announced his intention to relocate the CATS program to DEA Headquarters in Arlington, Virginia. Due to the CATS program relocation, plaintiff's position was also relocated to DEA Headquarters. Plaintiff alleges that "the move to relocate the CATS program had one purpose and one purpose only, to force Katz from the Agency as part of a retaliatory scheme to punish Katz for complaining about the corruption inherent in the award of [the] CATS [program] by senior DEA employees to their former colleagues." *See* SAC ¶ 108-09.

- After the decision was made to relocate the CATS program and plaintiff's former position in that program to DEA Headquarters in Arlington, Virginia, Derek Orr, a DEA employee in the Agency's Equal Employment Opportunity ("EEO") office contacted plaintiff to find a new reasonable accommodation for plaintiff. *See* SAC ¶¶ 132-34, 149.

- As part of the process of finding a new reasonable accommodation for plaintiff, Orr asked plaintiff for updated medical information. Plaintiff reports that plaintiff "repeatedly, consistently, and explicitly objected to Orr's requests as retaliatory, a violation of EEO law[,] and a perversion of the EEO process." SAC ¶ 136. Nevertheless, plaintiff reports that he responded to Orr's request for updates with "numerous medical opinions and information justifying [plaintiff's] accommodations and recommending that [plaintiff] remain in the vicinity of [Duke]." SAC ¶ 163.

- On or about August 1, 2019, Orr asked Dr. Chang, one of plaintiff's Stanford-based physicians, "Does [plaintiff] receive ongoing treatment at Duke University Medical Center for his condition and if so, what is the frequency?" SAC ¶ 193. It does not appear that this question was ever answered by plaintiff or his doctors. Indeed, there is no record in the SAC that plaintiff ever provided any letter, medical record, or other proof of care from anybody at Duke, despite numerous requests from the DEA to plaintiff and plaintiff's Stanford-based physicians for such documentation.

- On July 3, 2019, Deborah Lary, a nurse working for DEA's Health Services Unit, reviewed plaintiff's medical records and cancelled the medical advisory under which plaintiff had received his accommodation of placement in North Carolina and supplemental telework accommodation. *See* SAC ¶¶ 260-62. Greg Cherundolo, a Senior Executive Service official at the DEA, ultimately approved Lary's decision and cancelled plaintiff's medical advisory. *See* SAC ¶ 263.

- On July 11, 2019, the DEA directed plaintiff to report for duty at DEA Headquarters in

---

[5] Plaintiff's claims of anti-whistleblowing retaliation are pending before the Merit Systems Protection Board, and no such claims have been alleged in this suit.

4

- Arlington, Virginia. While logistics of the transfer were being finalized, plaintiff was to report to the DEA office in Raleigh, North Carolina. *See* SAC ¶ 264.

- Plaintiff never reported for report for duty at DEA Headquarters, and instead took a total of 955 hours of accrued leave from March 18, 2019 to April 1, 2020. *See* SAC ¶ 285. On April 1, 2020, plaintiff retired from the DEA at the age of 50. *See* SAC ¶ 290.

- Plaintiff initially made contact with the DEA's EEO office on March 8, 2019. Informal efforts between plaintiff and the EEO office to resolve plaintiff's complaints were unsuccessful, and on April 17, 2019, plaintiff filed a formal complaint. Plaintiff's initial EEO complaint raised thirteen specific incidents of discrimination, retaliation, hostile work environment, and improper request for medical records. Plaintiff amended his formal complaint eleven times between April 25, 2019 and July 16, 2019. *See* SAC ¶ 332.

On May 14, 2020, plaintiff filed a sixty-two page Complaint, asserting eight claims. See Compl. On July 14, 2020, defendants filed a motion to dismiss and, on August 11, 2020, plaintiff filed a seventy-five page Amended Complaint. On September 1, 2020, defendants filed their first motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6), Fed. R. Civ. P. After briefing and oral argument, an August 26, 2021 Order issued, granting in part and denying in part the motion to dismiss. The August 26, 2021 Order denied the motion with respect to plaintiff's claims for (i) failure to accommodate, (ii) retaliation, and (iii) constructive retaliatory discharge. The August 26, 2021 Order granted the motion with respect to plaintiff's claims for (i) improper collection of medical information, (ii) improper demand for medical information, (iii) hostile work environment, and (iv) constructive discriminatory discharge. As relevant for this motion, the August 26, 2021 Order granted plaintiff leave to amend his complaint solely with respect to his hostile work environment claim. On September 22, 2021, plaintiff filed his Second Amended Complaint. *See* Dkt. 57. On October 6, 2021, defendant filed the instant motion to dismiss, seeking to dismiss the amended hostile work environment claim. *See* Dkt. 58.

5

II.

The legal standard governing a motion to dismiss is well-settled and does not require extensive discussion. In order to survive a Rule 12(b)(6), Fed. R. Civ. P., motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). For purposes of resolving a motion to dismiss, plaintiff's well-pleaded allegations are assumed to be true and all facts are viewed in the light most favorable to plaintiff. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

III.

Defendant has moved to dismiss Count II of the SAC, which raises a claim of a hostile work environment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *See* SAC ¶¶ 232–93. In order to establish a *prima facie* case for hostile work environment under the Rehabilitation Act, plaintiff must allege that "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (applying standard at motion to dismiss stage); *Edmonson v. Potter*, 118 F. App'x 726, 730 (4th Cir. 2004) (applying ADA standard for a hostile work environment claim to the Rehabilitation Act). As the Fourth Circuit has

explained, "while a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555). Importantly, the Fourth Circuit has made clear that "only harassment that occurs because of the victim's [protected class] is actionable." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Thus, a claim of harassment which occurs for reasons unrelated to the plaintiff's protected class fail to state viable cause of action and must be dismissed.

As the August 26, 2021 Memorandum Opinion explained, plaintiff's First Amended Complaint alleged various incidents of supposed workplace harassment, but failed to allege that that harassment occurred because of plaintiff's disability. Absent this causal link between the alleged harassment and plaintiff's disability, plaintiff's hostile work environment claim cannot survive a motion to dismiss. As discussed below, the limited amendments plaintiff has made to his Second Amended Complaint fail to allege plausibly severe workplace harassment caused by plaintiff's disability. Accordingly, plaintiff's hostile work environment claim must be dismissed.

In the SAC, plaintiff alleges the following incidents of workplace harassment:

(1) plaintiff's supervisor made an unannounced visit to Fort Bragg;

(2) plaintiff's supervisor removed DEA computers from the Fort Bragg office;

(3) plaintiff was asked to account for the location of DEA equipment;

(4) plaintiff was subject to increased scrutiny, including being required to provide advanced notice of any leave of absence and to provide a daily report of plaintiff's work activities;

(5) the CATS program was transferred to DEA headquarters;

(6) plaintiff was asked to provide medical documentation related to plaintiff's workplace accommodations;

(7) plaintiff's workplace accommodations, allowing plaintiff to work in North Carolina

    and to telework as needed, were removed;

(8) criticism of plaintiff by his supervisor during his supervisor's unannounced visit to Fort Bragg;

(9) plaintiff was provided conflicting information during the reasonable accommodation process;

(10) plaintiff's medical advisory was cancelled by DEA employees; and

(11) plaintiff's supervisor removed a contract employee who had corroborated plaintiff's account of alleged agency fraud.

Even assuming *arguendo* that these allegations rose to the level of a sufficiently hostile workplace environment, which they do not, plaintiff has once again failed, despite the opportunity to amend, to allege plausibly that any of these purportedly hostile acts occurred because of plaintiff's disability. This defect is fatal to the hostile work environment claim, as binding Fourth Circuit precedent requires that a plaintiff raising a hostile work environment claim must allege that he suffered harassment because of his disability. *See Fox*, 247 F.3d at 177. As explained below, plaintiff does not plausibly allege any such causal link between the above actions and his disability, and therefore the hostile work environment claim must be dismissed.

  Plaintiff's complaint alleges in several different paragraphs that the alleged discrimination occurred because of plaintiff's whistleblowing activity, not because of plaintiff's disability. For example, plaintiff alleges that his job transfer was a response to plaintiff's whistleblowing, as plaintiff alleges that "Immediately after [plaintiff] contracted investigators, [plaintiff's supervisor] began scheming to remove plaintiff from his position and transfer control over CATS to Arlington, Virginia." SAC ¶52. Plaintiff also alleges that "Until [plaintiff and his colleague] reported their concerns to federal investigators…[plaintiff's supervisor] had never visited the CATS site." SAC ¶ 57. Thus the complaint alleges that plaintiff suffered workplace harassment on account of

8

plaintiff's whistleblowing activity and not because of plaintiff's disability.[6]

To be sure, plaintiff is only required to allege that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). But the complaint precludes the possibility that plaintiff's DEA supervisors were motivated by a dual purpose (i.e. anti-whistleblowing discrimination *and* disability discrimination), for the complaint unequivocally alleges that "the move to relocate CATS had *one purpose and one purpose only*, to force Katz from the Agency as part of a retaliatory scheme to punish Katz for complaining about the corruption inherent in the award of CATS by senior DEA employees to their former colleagues who were now in private industry." SAC ¶ 109 (emphasis added).[7] The facts alleged in the complaint fail to plead, much less to plead plausibly, any causal link between plaintiff's disability and the allegedly hostile work environment plaintiff endured. Without this causal link, the Second Amended Complaint fails to state a plausible hostile work environment claim. Thus, defendant's motion to dismiss must be granted and the hostile work environment claim must be dismissed.

---

[6] Plaintiff has not alleged in this lawsuit that any DEA employees violated provisions of federal anti-whistleblower statutes. Further, the Fourth Circuit has made clear that "two separate statutes and anti-retaliation provisions do not cross-pollinate." *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020) (internal citations omitted). Thus, plaintiff's Rehabilitation Act claim cannot be based on his employer's response to protected whistleblowing activity.

[7] The August 26, 2021 Memorandum Opinion dismissing the hostile work environment claims quoted identical language in the First Amended Complaint and explained that this language undermined plaintiff's ability to plead adequately that the purported workplace harassment occurred because of plaintiff's disability. *See* Dkt. 50 at 15. Despite receiving this warning in the August 26, 2021 Memorandum Opinion, plaintiff failed to remove this allegation from his Second Amended Complaint. Thus, on its face the Second Amended Complaint alleges that the hostile work environment occurred because of plaintiff's whistleblowing activity and not because of plaintiff's disability.

Even assuming that plaintiff's Second Amended Complaint plausibly connected the alleged hostile work environment to plaintiff's disability, the alleged harassment that plaintiff endured does not rise to the level of a hostile work environment. Even construed in the light most favorable to plaintiff, the allegations in the SAC fail to allege that "the harassment was sufficiently severe or pervasive" as to create a hostile work environment. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). The Fourth Circuit has made clear in related hostile work environment claims arising under Title VIII that plaintiffs "must clear a high bar in order to satisfy the severe or pervasive test." *Id.* The additional harassment plaintiff alleges in his SAC—which amounts to little more than requests for medical documentation as part of the reasonable accommodation process—fails to clear this high bar. Instead, the alleged harassment merely represents plaintiff's disagreement with the DEA's decision to revoke plaintiff's previously-granted workplace accommodation. But the agency was not required to provide this accommodation to plaintiff in perpetuity, and plaintiff cites no case or statute stating that the DEA was not entitled to revoke his reasonable accommodation after its thorough review.[8] As the Fourth Circuit has noted, employment discrimination suits do not transform district courts into "'super-personnel department weighing the prudence of employment decisions' made by the defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir.1998)).

Accordingly, plaintiff's hostile work environment claim must also fail because the claim fails to allege sufficiently pervasive or severe workplace harassment. This matter will therefore

---

[8] In addition, and as stated in the August 26, 2021 Memorandum Opinion, plaintiff's failure to accommodate claim is extraordinary in nature, as there are numerous hospitals and medical centers close to Arlington, Virginia where plaintiff could presumably receive adequate medical care.

10

proceed only on plaintiff's claims for (i) failure to accommodate, (ii) retaliation, and (iii) constructive retaliatory discharge. An appropriate Order will issue separately, and that Order will also provide a briefing and discovery schedule for this matter. That Order will provide deadlines for discovery and summary judgment briefing.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
June 30, 2022

/s/
T. S. Ellis, III
United States District Judge

11